## MANUEL SALCEDO ET AL., Plffs.

### *v.*

## JOSÉ ALVAREZ Y GONZALEZ ET AL., Dfts.

San Juan, Equity, No. 957.

SETTING ASIDE DOMINIO PROCEEDINGS.

Equity—Jurisdiction—Adequate Remedy at Law.
    1. Where a party to a suit in equity answers and submits to the

NOTE.—As to effect of delay in probating will, see note in 57 L.R.A. 253.
    VIII. Porto Rico—34.

Salcedo v. Alvarez y Gonzalez.

jurisdiction of the court without raising the question of remedy at law by some preliminary motion, it is too late for him to object, at the hearing on the merits, that such a remedy at law exists.

Equity—Suit to Cancel Recorded Title.

2. This court has jurisdiction in equity of such a suit, in order to prevent a multiplicity of suits growing out of the alleged cloud upon plaintiff's title.

Suit to Quiet Title—Lis Pendens.

3. The pendency of a suit for rivindicacion in a local court by this plaintiff against one of these defendants over this same land is no bar to a suit in this court to cancel defendant's dominio title to said land.

Suit to Quiet Title—Declaration of Heirship.

4. In a suit over title to specific property brought by all of the heirs of a deceased owner thereof, a declaration of heirship is not a necessary prerequisite to such suit.

Wills—Validity—Statute of Limitations.

5. A will which is neither signed, sealed, nor rubricated by the notary before whom it was executed, which has never been probated nor recorded, and which was executed thirty-three years ago, is void; the right to probate a will expires by limitation in thirty, or perhaps twenty, years.

Res Judicata.

6. Where a local court dismisses a petition for declaration of heirship upon the ground that deceased left a will, this is not a decision upon the merits as to the validity of that will, and does not bar a later action to declare the title claimed under said will void upon the ground that the will itself is void.

Dominio Title Proceedings.

7. A necessary requisite of such proceedings is that the grantor of the petitioner or his heirs be notified of such petition; a notice to husband of deceased grantor is not sufficient, since he is not her heir, and claims only under a will which has never been established; such proceedings are therefore void.

Same.

8. Evidence held to show that sale was fraudulent and without consideration.

Opinion filed April 7, 1916.

Salcedo v. Alvarez y Gonzalez.

## Statement of Facts.

The original bill in this cause is filed June 22, 1915, by Manuel, Felipe, an Magdelena Salcedo y Berrios, Mercedes Salcedo y Lebron, and Calixto, Gregorio, Concepción, Luisa, Andrés, Estanislao, Félix, and José Emilio Salcedo y Mendez, the last three being minors and appearing herein by their tutor, Calixto Salcedo y Mendez, against José Alvarez y Gonzalez, known as Francisco Alvarez, and Concepción Andreu y Corcino. It alleges that the complainants are citizens and residents of Porto Rico, of legal age, with the exception of three who are minors and appear by their eldest brother and tutor, and that the defendants are Spaniards, residents of the municipality of Naguabo, Porto Rico. That about October 3, 1883, one Aquilina Salcedo y Rodriguez died intestate at Naguabo, leaving as her only heirs her brothers Manuel and Guillermo. That these brothers subsequently died, Guillermo without issue, and Manuel leaving as his heirs certain children. That afterwards two of these children died intestate, leaving children. That the plaintiffs herein are all these children and grandchildren now living. That at the time of her death Aquilina left a certain finca in the Barrio of Daguao, of said municipality, composed of 108 cuerdas, more or less, purchased by Aquilina December 5, 1867, from Juan Bas y Bas by public deed, duly inscribed at Humacao, December 28, 1911. So far, there seems to be no reasonable doubt as to the facts proved in the case. The bill then goes on to allege that defendant José Alvarez, upon the death of Aquilina, to whom he was married shortly prior to her death, entered fraudulently upon this property and refused to deliver the same to the plain-

Salcedo v. Alvarez y Gonzalez.

tiffs, who brought a suit of reivindicacion against him at Humacao, March 13, 1912. That this suit was not pressed to judgment, because on November 30, 1914, defendant Concepción Andreu appeared before the district court of Humacao and sought and obtained dominio title to the land in question, alleged to embrace 115 or 119 cuerdas, which petitioner claimed to have purchased from Aquilina more than thirty years previously, and had not an inscribable title. The bill goes on to allege that this claim was made at the instance of José Alvarez, with fraudulent purpose of defeating the claim of the plaintiffs. That the decree of the district court of Humacao was rendered March 4, 1915, in favor of Concepción Andreu, and the dominio title thus obtained was inscribed at Humacao in the 16th volume of Naguabo, folio 32, No. 768. The bill seeks to have plaintiffs adjudged owners in full dominion, entitled to immediate possession, and that the alleged dominio title be declared null and void and the inscription canceled. The answer of defendants José Alvarez and Concepción Andreu, filed August 18, denies most of the allegations of the bill, and in particular that Aquilina died intestate, inasmuch as it alleges that José Alvarez and Aquilina duly authorized a nuncupative will, April 12, 1883, before the notary Don Eugenio de Torres y Berrios at Humacao, whereby they made each other heirs. That Concepción acquired the property in question by purchase from Aquilina, as stated in the dominio proceedings. The defendants further allege that they are neither owners nor in possession of the property, but that the same was sold to the Fajardo Sugar Growers Association by public deed dated March 10, 1915.

Plaintiffs, by leave of court, filed a supplemental complaint

Salcedo v. Alvarez y Gonzalez.

on November 10, 1915, making James H. Post, James Bliss Coombs, and Lorenzo D. Armstrong parties defendant as trustees of the Fajardo Sugar Growers Association, and therein denying any valid sale to the Fajardo Sugar Growers Association, and asking that, if such sale be established, it be declared null and void as against complainants, and that said new defendants be declared liable to complainants for rents since they entered into possession. On December 8, 1915, there was filed by old and new defendants an answer to the supplemental complaint, denying many allegations thereof, in particular alleging: "(a) That Aquilina Salcedo, of whom plaintiffs claim to be heirs, did not die *ab intestato,* but that, on the contrary, she authorized a will, which will has not been declared void. (b) That in the year 1883, Don Manuel and Don Guillermo Salcedo, brothers of the deceased Aquilina Salcedo, established an action in the juzgado de primera instancia de Humacao, relative to *ab intestato* of Aquilina Salcedo, such action being denied to them because it appeared that there was a will, and la audiencia territorial de Puerto Rico, with date of the 18th of March, 1885, rendered a judgment confirming sentence of the juez de primera instancia de Humacao, against which judgment no other appeal has been interposed. (c) That under the date of the 27th of June 1913, the district court of Humacao in the case No. 2422, established by Manuel Salcedo Berrios et al., relative to (declaratoria de herederos) action petitioning for the recognition of the heirs of Aquilina Salcedo, rendered a judgment denying the petition, against which judgment no appeal has been taken."

The case was heard upon the proofs on January 26, 1916.

The judgment of the court of first instance of Humacao

Salcedo v. Alvarez y Gonzalez.

upon the petition of Manuel and Guillermo Salcedo was intro-
duced as follows:

Humacao, November 26, 1883. Whereas it appears from
the preceding certificate that there exists in the archives of
the notary's office of this city a will executed by Mrs. Aquilina
Salcedo, jointly with her husband, Mr. José Alvarez y Gon-
zalez, and whereas it is not proper to decide or state, as matter
of course, the validity or invalidity of said will, on account
of the lack of the rubric and signature of the notary before
whom said will was executed; whereas, in order that a trial
of death *ab intestato* may be carried out, it is a first primarily
precise and indispensable condition that there should be in
existence no testamentary disposition;

The remedy asked for in the petition presented on the 6th
of this inst., to which prayer it is hereby provided, and as the
indigency of the petitioners has not yet been justified, these
will return the paper not used. So ordered and signed his
Honor which I hereby certify.

(Signed) Vias.<br>(Signed) Franco Ramos.

I also certify that the real audiencia territorial passed the
following judgment:

Judgment: Attorney Mr. Eduardo Rodeyro y Garcia, clerk
of cámara de la audiencia territorial of Porto Rico, certify:
that the court has rendered the following judgment. No. 13.
In the city of San Juan Bautista of Porto Rico, on the 18th
day of March, 1885: In the probate trial promoted in the
court of first instance of Humacao by the attorney Mr. José
Calixto Bajandas, representing Mr. Manuel de Jesús and Mr.
Guillermo Salcedo, legitimate brothers of Mrs. Aquilina Sal-

Salcedo v. Alvarez y Gonzalez.

cedo, who died without executing valid will, pending before us by virtue of the appeal interposed by the said attorney Bajandas, freely admitted and in both effects of the writ of the 1st of December, 1883, which he sets aside the reposition of the writ of the 26th inst., to the principal prayer of which it is here provided; and not having as yet justified the indigency of the promoters, these will restore the document not used.

The judgment of 1913 upon the petition for statement of heirs is as follows:

Judicial District of Humacao, P. R., in the District Court. Manuel Salcedo Marrios, et al., complainants, v. José Francisco Alvarez, opponent. No. 2422. Statement of Heirs.

Judgment: Having the petitioners presented their prayer, and appeared before this court, the opponent Alvarez objecting to said statement of heirs, because Doña Aquilina Salcedo y Rodriguez, of whom the petitioners claim to be heirs, died executing a will.

The court set aside a day for the presenting of evidence, and there appeared only on that day the opposing party, José Francisco Alvarez, and the petitioners did not appear; evidence was presented which was offered by the appearing party, and from such evidence it appeared that the deceased Doña Aquilina Salcedo executed a will which has not been declared void by any competent court.

It appearing also from such evidence, that for this same reason another petition of statement of heirs above indicated had been set aside by the court of the first instance of Humacao.

Wherefore the court believes that it must set aside the peti-

tion presented, until the petitioners justify the right that they may have, exercising such rights before competent courts. It is hereby ordered that the parties interested shall be notified of this judgment.

Given in open court in Humacao, Porto Rico, to-day the 27th of June, 1913. ·

(Signed) J. A. Lopez Acosta, Judge Dist. Court.

Attest:

(Signed) Jesús L. Jereyó, Secretary.

The dominio proceedings sought to be set aside are as follows:

Judicial District of Humacao, P. R., in the District Court. Concepción Andreu Corcino, Ex parte, Civil No. 3706. Dominion. ¡ Motion.

The above-named petitioner, by her attorney undersigned, appears before the court and sets forth:

First: That the said petitioner is of legal age, property owner, and a resident of Naguabo, and likewise, that she is the owner of the following properties: (a) Rustic: farm consisting of 119 cuerdas of land, high and low, equivalent to 46 hectares, 77 ares, and 17 centiares, situated in the ward of Daguao, in the municipality of Naguabo, bounded on the north by Don Félix Ortiz, Doña Tina Sanchez, and Don Julian Rivera, on the south by the road leading from Fajardo to Naguabo, on the east by Julian Maldonado, Lauri Williams, and Reichard Williams, on the west by Doña Anita Joseph and Concepción Andreu. (b) Rustic: farm consisting of 5½ cuerdas of land, equivalent to 2 hectares, 16 ares, and 66 centiares, lying in the ward of del Daguao, in the municipality of Naguabo, bounded on the north by Doña Concepción Andreu and the colonia Esperanza; on the south by the road which leads

from Fajardo to Naguabo; on the east by Doña Concepción Andreu, and on the west by the colonia Esperanza, aforesaid.

Second: That the above-described property marked letter "a" was acquired by the petitioner in the following manner: 115 cuerdas by purchase from Doña Aquilina Salcedo, more than thirty years since, ½ cuerda from Juliana Corcino, more than ten years ago, 2 cuerdas from Master Bari, more than twelve years ago, and 1½ cuerdas from Rosalia Melendez, ten years ago. The property marked letter "b," also above described, was acquired by the petitioner from Doña Aquilina Salcedo, by purchase to her made more than thirty years ago, the first having a value of $1,000, and $300, the second.

Third: During the dates mentioned in the foregoing allegation, the petitioner has been in possession of the above-described properties as the owner thereof, quiet and peacefully, without any interruption, and in good faith and good title.

Fourth: The petitioner does not hold a written dominion title, inscribable, and in order to obtain the same institute these proceedings in accordance with the provisions of the Mortgage Law in force, offering to the court such oral and documentary evidence as may be necessary to show her rights.

Wherefore, I pray the court that in due course, and following the proceedings of law, to declare justified the dominion of said properties in favor of the petitioner Doña Concepción Andreu Corcino, and directing that the same be recorded in her name in the registry of property of the district.

Humacao, P. R., Nov. 30, 1914.

(Signed) Jose L. del Valle,
Attorney for the petitioner.

Salcedo v. Alvarez y Gonzalez.

Whereupon follows an order of publication, notice to the people of Porto Rico, affidavit of the newspaper La Democracia, opinion of the district attorney, stenographic record of evidence, and then the following order:

On the first day of March, 1915, there appeared before this court attorney J. Lopez del Valle, on behalf of the petitioner Concepción Andreu y Corcino, asking that an order be issued approving the dominion on the following properties:

(a) Rustic: farm consisting of 119 cuerdas of land, high and low, equivalent to 46 hectares, 77 ares, and 17 centiares, located in the ward del Daguao, in the municipal district of Naguabo, bounded on the north by Don Felix Ortiz, Doña Tina Sanchez, and Don Julian Rivera, on the south by the road which leads from the town of Fajardo to Naguabo, on the east by Julia Maldonado, Lauri Williams, and Reichard Williams, and on the West by Doña Anita Joseph and Doña Concepción Andreu. (b) Rustic: farm consisting of 5½ cuerdas of land, equivalent to 2 hectares, 16 ares, and 66 centiares, lying in the ward of the Daguao, in the municipality of Naguabo, bounded on the north by Doña Concepción Andreu and la Colonia Esperanza; on the south by the road leading from Fajardo to Naguabo; on the east by Doña Concepción Andreu, and on the west by the colonia Esperanza aforesaid.

The court, having heard the motion and the evidence presented in the case, orders: Whereas, in pursuance to an order of this court dated December 7th, 1914, edicts were published in the newspaper La Democracia, for three times during the term of sixty days, after the lapse of which no person appeared in opposition to the information of dominion requested: where-

as, from the proof presented by the petitioner it has been shown to the satisfaction of the court the dominion which said petitioner has upon the properties above described, the same being free from all lien or encumbrance, and having been acquired in the following manner, to wit: 115 cuerdas by purchase from Doña Aquilina Salcedo, more than thirty years back, ½ cuerda from Juliana Corcino, 2 cuerdas from Mestro Bari, and 1½ cuerdas from Rosalia Melendez, more than ten years ago, all what refers to that marked letter "a;" she having acquired that marked letter "b" by purchase from Doña Aquilina Salcedo, more than thirty years ago, the first having a value of $1,000, and the second of $300. Whereas, this record having been referred to the district attorney, he has recommended the granting of the petition, setting forth that he has nothing to say in opposition to the information requested, all the legal requisites having been complied with:

Now, therefore, the court is of the opinion that the law and the facts are in favor of the information of dominion requested, and in virtue thereof declares justified the dominion of the properties above described in favor of the petitioner Concepción Andreu y Corcino, and orders that the same be inscribed in the registry of property of the district of Humacao.

Humacao, P. R., March 4, 1915.

(Signed) R. Cuevas Zequeira, District Judge.

*Messrs. H. G. Molina* and *R. J. Van Deusen* solicitors for plaintiffs.

*Messrs. Luis Muñoz Morales* and *Armstrong & Keith* solicitors for defendants.

Salcedo v. Alvarez y Gonzalez.

Hamilton, Judge, delivered the following opinion:

The questions raised by this suit relate to the jurisdiction of this court in connection with the inheritance and title quieting (dominio) laws of Porto Rico. They will be discussed as they have arisen in the case, beginning with those which relate to the rights of the plaintiffs to sue.

1. It is argued that the plaintiffs have a remedy at law in that the local procedure permits instruments void from fraud or other causes to be set aside, and reference is had to Revised Statutes of United States, § 723. This says that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." The section is declaratory of the usual equity rule. And that rule is subject to the well-known principle that where equity originally has a remedy, this is not taken away by legislation conferring practically the same remedy on a law court. Where a party to a suit in equity answers and submits to the jurisdiction of the court, as in the case at bar, without raising the question of remedy at law by some preliminary motion, it is too late for him to object on the merits that such a remedy exists at law. Mercelis v. Wilson, 6 Porto Rico Fed. Rep. 42 (see also 235 U. S. 579, 59 L. ed. 370, 35 Sup. Ct. Rep. 150); Kilbourn v. Sunderland, 130 U. S. 505, 514, 32 L. ed. 1005, 1008, 9 Sup. Ct. Rep. 594.

Moreover, it would seem that the equitable remedy to remove a cloud from the title has been enlarged by the local law so as to obviate the necessity for the plaintiff to be in possession when he sues. The Porto Rico Code of Civil Procedure, § 282, declares that "an action may be brought by any person against

another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim." "This is taken from § 738 of the California Code of Civil Procedure, which has been construed as applicable to plaintiffs out of possession. More v. Steinbach, 127 U. S. 70, 32 L. ed. 51, 8 Sup. Ct. Rep. 1067. In a case very similar to the one at bar, Parés v. J. Reynes & Co. 2 Porto Rico Fed. Rep. 402, 422, it was declared that the remedy at law was not plain, as the complainant would have first to go into court and set aside the proceeding,—in that case an expediente posesorio,—and later bring another suit to set aside a deed in question, then bring a proceeding against heirs to supply a lost deed, and still another to have his final title registered. The result, therefore, is not only that there is not an adequate remedy at law under Revised Statutes, § 723, but this court has jurisdiction in equity in order to prevent a multiplicity of suits growing out of the alleged cloud upon plaintiff's title.

2. The point is made by the defendants that the plaintiffs have brought in the local district court at Humacao a suit against defendant José Alvarez y Gonzalez to reivindicate the land in question, and it is alleged that as this action is still pending, it constitutes a conflicting *lis pendens.* The claim is that this court of equity has, therefore, no jurisdiction to proceed with another suit as to the same issue. This contention, however, seems to be without merit. The local suit in question was against Alvarez as owner, and subsequent to its institution there were had the dominio proceedings now sought to be set aside. If these proceedings stand, the local suit of reivindicacion cannot proceed. The very object of the present suit is to set aside the dominio proceedings which stand in

the way of the reivindicacion proceedings for the land itself. Whether it will be necessary ultimately to dismiss the local reivindicacion proceedings or not, in order that all questions may be settled in the suit in this court, is a matter not before us. The suit at bar could at least proceed so far as relates to the attack upon the dominio proceedings.

3. It is argued, however, that plaintiffs have no standing in court, because they have not been adjudicated to be the heirs of Aquilina Salcedo, who is shown to have died October 3, 1883. It is unquestionably true that the local law requires certain special proceedings for the declaration of the heirs of a decedent. This is called a "declaratoria de herederos," and is provided in the law for special proceedings as to decedents, approved March 9, 1905, as follows:

"Sec. 19. In cases of intestate succession, or of the nullity of a will, those who may have an interest in the inheritance may petition the district court of the last domicil of the decedent, or of the place where his property is situated, for the issuance of the corresponding order of heir's declaration.

"(1) The petition shall state, under oath, the death of the person the heirship or succession to whom is claimed;

"(2) That according to the best information and belief of the petitioner, who shall state the sources of such information and the grounds for such belief, the said decedent died without leaving a will; that due search and inquiry have been made and that none has been found, or if he left a will, that same has been declared void;

"(3) The names and domicils of persons who are entitled to the heirship or succession; or

"(4) The probatory means of which the petitioner intends

to make use in order to prove that those indicated by him are the only heirs.

"The judge to whom the petition has been presented, in the briefest period possible, shall hear the proof presented, and from the result thereof shall issue the proper order. Said order shall be issued without prejudice to a third party, unless it relate to heirs at law." [Rev. Stats. & Codes 1911, p. 302].

There would seem to be no question that this procedure must be followed where it is a matter of general succession. The point involved here, however, is whether such a proceeding is a prerequisite to suit for a particular piece of land? There is no question that the Federal court is not a court of probate, and would not in general be the form in which such a special procedure would be taken. It is a very different proposition, however, that the Federal court must sit idle until such a procedure has been had in a local court in regard to a particular piece of land. Such, certainly, was not the law prior to the act of 1905.

The present plaintiffs are not proceeding as the heirs of Aquilina Salcedo. She died in 1883, leaving two brothers. Both brothers subsequently died, and the plaintiffs claim as the representatives of the one leaving issue. Is it necessary that these two brothers, who died long before 1905, be declared the heirs of Aquilina? The Civil Code of Porto Rico, which copies the Civil Code of Spain in force at the time of the death of the surviving brother in 1892, declares that the right which the relatives of a person have to succeed him, called the right of representation, applies in the direct descending line, and in the collateral is also effective in favor of the children of brothers and sisters. Civil Code, §§ 898, 899. These broth-

ers were, therefore, proper representatives of Aquilina at the time of her death, and so far as is shown there was no law at that time requiring any special proceedings to have them declared such.

Moreover, it has been held that a local district court can find plaintiffs to be such representatives *ad hoc* without any evidence of special proceedings to declare them heirs. Morales v. Landrau, 15 P. R. R. 761, 777. The ingenious argument is suggested that if a court cannot make a general declaration of heirship, it cannot make a special finding thereof in regard to a particular piece of property. But this does not follow. Indeed, in Soriano v. Rexach, Sup. Ct. P. R., March 9, 1916, the reivindicacion proceeding is ranked more satisfactory. All land in a state has an owner, and while the state may make laws as to probate proceedings, and these should be followed in all proper cases, it still remains that if such proceedings have not been had, nevertheless each individual piece of land must be owned, and such owner must be in the position of suing or being sued in regard thereto. This is a distinct proposition from the universality known as a succession, wherein a dead man is kept alive, so to speak, in his heirs for payment of debts and other purposes. The power of a court of general jurisdiction to proceed in a suit for property without waiting for the special proceedings under the law of 1905 is fully recognized both in Porto Rico and in Spain. Velilla v. Piza, 17 P. R. R. 1069; Collado v. Perez, 19 P. R. R. 881. To the same effect was the holding of this Federal court in Santiago y Muñiz v. Amangual, ante, 111. This court has no general probate jurisdiction, and none under the special proceedings of 1905; but the Federal courts of chancery have the right

to exercise original jurisdiction, the proper diversity of citizenship existing, in favor of heirs to establish their claims. If a bill seeks more than this court can grant, the decree will, nevertheless, go to the extent that the court has jurisdiction. Waterman v. Canal-Louisiana Bank & T. Co. 215 U. S. 33, 43, 54 L. ed. 80, 84, 30 Sup. Ct. Rep. 10.

For completeness it may be added that there is no question one of several heirs cannot, until the completion of the special proceedings in Porto Rico for liquidation, claim any particular piece of property, because he has only an inchoate fractional interest. Fernandez v. Velazquez, 17 P. R. R. 716; Trinidad v. Trinidad, 19 P. R. R. 616. This principle is not applicable to the case at bar, a suit by all representatives to have removed a cloud on their title.

This is a suit to establish rights of plaintiffs in direct succession to Manuel de Jesus Salcedo, who died in 1892, being at the time the only representative of Aquilina. The plaintiffs have been duly declared heirs of Manuel by a decree of January 11, 1916, in the special proceedings provided for by law. The bill, therefore, is not subject to the objection that it is a suit brought by remote collaterals.

4. It is further claimed that the plaintiffs have no right to the property late of Aquilina, because she left a will making other disposition of it. This will is alleged to have been made April 12, 1883, as a joint will with her husband, the defendant Alvarez. Such a will is not now legal under the Civil Code, § 677. The instrument was not signed, sealed, or rubricated by the notary, Eugenio de Torres, before whom it was executed. It was not offered at the trial as part of the chain of title, but for the purpose of showing that the plaintiffs

Salcedo v. Alvarez y Gonzalez.

are not heirs until the will is set aside. In this paper defendant José Alvarez y Gonzalez and Aquilina Salcedo y Rodriguez de Alvarez "authorize the present nuncupative will to the effect that upon the death of either one the other succeeds to all their property, and wish this original deed kept in the general current archives." There it has remained ever since, and no one has sought to probate or record it in Spanish times, or under the American domination. Act March 9, 1905, §§ 9, 18, 65.

It has now been thirty-three years since the alleged will was executed. Under the Civil Code effective here since 1889, § 713, "wills executed without the authentication of a notary shall be void if they are not afterwards reduced to a public instrument and placed in the protocol." Under the act of 1905 relating to special legal proceedings, § 1, a nuncupative will may be reduced to a public instrument on the application of a beneficiary, one upon whom a duty is imposed by the will, a legal representative of either of these two, or a witness to the will, and substantially the same requirements existed under the old Spanish law. Thirty, or perhaps twenty, years furnish a limitation to the right to probate a will. Civil Code, §§ 1860, 1864, etc. In equity at least, such an instrument, void on its face under the local law, will be a stale demand after twenty years. Whatever might have been the rule as to the above proceedings in the local courts in past years, if the paper could not be enforced, it cannot now in this court be set up for any purpose. Under § 665 of the Civil Code, "the rights to the succession of a person are transmitted from the moment of his death." Under § 666, "succession is granted either by the will of a man as expressed in a will, or in its absence by provision of law. The first is called testamentary, the second

Salcedo v. Alvarez y Gonzalez.

legal succession." Under § 669, "heirs succeed the deceased in all his rights and obligations by the mere fact of his death." It follows, therefore, that in this case there was no valid will on the part of Aquilina.

5. The point is raised that all question of heirship or representation on the part of the plaintiffs is already foreclosed by previous court decisions, that it is, in fact, res judicata. This principle is, of course, one which is well known. The definition of Lord Hardwicke in Gregory v. Molesworth, 3 Atk. 626, has been approved by many authorities. This was that when a question is necessarily decided in effect, though not in express terms, between parties to the suit, they cannot raise the same question as between themselves in any other suit in any other form. Res judicata is not the same as estoppel. Estoppel rests on equitable principles, and res judicata rests on maxims which are taken from the Roman law. It is a fundamental concept in the organization of civil society. Bouvier's Law Dict. s. v. According to Lord Blackburn, the doctrine was not received in England directly from the Roman law, as it was on the Continent, but nevertheless it is an integral part of the laws as administered in the English and American courts. It is equally well recognized in Porto Rico. To be effective there must be a final determination of the cause on the merits. It requires a concurrence of three or four conditions, as follows: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties, including the quality in which they sue. The fundamental principle of the rule is that the decision of a court of competent jurisdiction is a final settlement of the questions involved in any particular controversy as to the parties concerned therein, and as to any title claimed under those parties.

Wells, Res Adjudicata, § 5; Vega v. Rodriguez, 21 P. R. R. 318. There must be an identity of things, causes, and parties.

The particular judgments set up in this case as *res judicatæ* are that of the court of first instance at Humacao, debarring her two brothers from being declared the heirs of Aquilina, and that of 1914, debarring these plaintiffs in the same way. Ordinarily in probate matters in the United States, the decree of a court is *in rem*, conclusive against the world. Such a decree is a declaration of status, and the civil law is especially rich in all matters affecting status. It is not necessary to determine whether the heirship proceedings under the old Spanish procedure had this nature in all respects. The proceeding of 1883 does not pretend to decide the question of heirship. The court determined that, as it was an indispensable condition that there should be in existence no testamentary disposition, and as there was shown to exist a paper purporting to be a will, which nevertheless the court was not called upon to pass upon, the petition was denied. In other words, the case was not decided on the merits, whether it was *in rem* or *in personam*.

The same is true of the proceeding in 1913 to have the present plaintiffs declared heirs *ab intestato* of Aquilina Salcedo. The defendant Alvarez appeared as a party, and by evidence of the existence of the alleged will, not declared void by any competent court, succeeded in having the Humacao district court deny the petition "until the petitioners justified their right before some competent court." This was not a decree upon the merits, because it denied the petition only until petitioners justified their right. This they are now doing, and so far as relates to the obstacle to the action of the Humacao

court, the supposititious will, that was eliminated by time, as seen above.

There is therefore no question of *res judicata* in the case as it comes before this court.

6. It is maintained, however, on behalf of the defendants, that Aquilina during her lifetime had already sold the property to defendant Concepción Andreu, and that Concepción's dominio proceedings in the district court of Humacao March 4, 1915, validly established the title in her, after which she sold to the defendants trustees of the Fajardo Sugar Growers Association. The question, therefore, now comes up as to this dominio proceeding. Under article 395 of the Mortgage Law, modified in part by the military order of April 4, 1899, proceedings to establish title may be as follows:

"Art. 395. Any owner of property having no written title of ownership whatever be the period of the acquisition, may record such ownership upon proving it under the following formalities:

"1. He shall submit to the judge of the court of first instance of the judicial district in which the property is situated, or to the one of the district in which the larger portion thereof is situated, if the estate be located in more than one district, a statement of the manner in which he acquired it and any legal proof of such acquisition which he may have to offer, and praying that, after citation of the person from whom the property may have been acquired, or of his predecessor in interest, and of the representative of the department of public prosecution, such evidence be admitted and a declaration of his rights made.

"2. The judge shall refer this petition to the representative

of the department of public prosecution, shall cite the person from whom the property was acquired or his predecessor in interest, if known, and the persons who may have any property right in said real property; he shall admit all pertinent evidence which may be offered by the petitioner, by the interested persons cited or by the representative of the department of public prosecution within the term of 180 days, and he shall summon the unknown persons who might be prejudiced by the record applied for, by means of notices which shall be posted in public places and inserted three times in the official newspapers of the respective colonial province, in order that they may appear if they wish to assert their rights.

"If the persons to be cited should be absent, the procedure established in rule 5 of article 391 shall be followed in making the citations.

"3. Upon the expiration of this period, the judge will receive written pleadings upon the claims and evidence which may have been presented by the representative of the department of public prosecution or by the other persons who may have attended the proceedings; and in view of their allegations he shall decide on the evidence with an impartial judgment and declare whether or not the ownership of the property involved has been established.

"4. The representative of the department of public prosecution or any of the persons interested may appeal from this decision; and should they do so, the appeal shall be heard and decided according to the procedure established for incidental issues in the law of civil procedure.

"5. If said decision is accepted or affirmed, it shall constitute a sufficient title for the record of the ownership.

Salcedo v. Alvarez y Gonzalez.

"6. When the value of the real property shall not exceed 1,000 pesos, the proceedings which, according to rule 3, must be had in writing and submitted to the representative of the department of public prosecution and to the parties interested, shall be oral; and the appeal, in a proper case, shall conform to the procedure established for appeals of this character in actions of 'lesser import' .(menor cuantia)."

In the case at bar these proceedings were had, resulting in a decree of the district court of Humacao, March 4, 1915, which was registered in the registry of property at Humacao, the finca being described as "119 acres of land. Vol. 16 Naguabo; Folio 33, Finca 468, Second inscription." This proceeding is now alleged to have been fraudulent, and the removal of it as a cloud is the main issue in the case at bar.

It is shown by the evidence in this case, and indeed by the evidence in the dominio proceeding, that Alvarez was at the time of the alleged sale the husband of Aquilina, and that after the death of Aquilina, the vendor, he became the husband of Concepción, the vendee.

The Mortgage Law above requires that in dominio proceedings the person from whom the property was acquired, or his legal representatives, should be cited. In the proceeding in question the notice was issued to Alvarez, the husband of both the grantor and the grantee. The only theory upon which this could be justified was that he was the heir of Aquilina under the will above discussed. This will, however, has never been established as a will, and whatever might be its negative power as to other proceedings at that time, certainly it has no positive power of conferring title. Ex parte Perrier, 20 P. R. R. 119. It follows, therefore, that the notice was not is-

Salcedo v. Alvarez y Gonzalez.

sued to the proper representatives of the succession of Aquilina Salcedo. Alvarez, moreover, was the chief witness for the petitioner in the dominio proceedings.

The petition is also improper in that it recites there was no inscribable title to the property. It may be questioned whether a dominio proceeding was proper in this case in any event. The defect of Concepción, if she owned the property, was not in there being no inscribable title to the property, but in her having never received a deed from Aquilina. In such case the proper procedure would have been, not dominio proceedings, but one to establish the title, somewhat as in the case at bar.

If the proceeding were regular, this court would not go behind the face of the record. It being, however, open to the objection of the plaintiffs in this case, it is to be noted that the evidence offered for Concepción's purchase from Aquilina is not at all satisfactory. The principal testimony is that of her husband, the defendant Alvarez, whose statement is vague at best. He says, "We were taken sick and there was that lady widow there, and we ran to her, and she being our neighbor, and we sold that property to her." The lady widow in question was Concepción, and the testimony leaves it quite doubtful that Aquilina was in any such need. At her death shortly afterwards she had other property, and the possession of the land in question never apparently changed hands. Alvarez married Aquilina, February 8, 1883. On April 12 of the same year they attempted to make a joint will, and at that time had no debts. The sale to Concepción must have been about August, as it was several months before the death of Aquilina, October 3, 1883. There is no evidence that Con-

Salcedo v. Alvarez y Gonzalez.

cepción had any such sum as 1,500 pesos to pay for the finca, and improbable that she would do so if she had it without obtaining a deed, particularly as less than a year before she had exacted a public deed for another piece of property she bought. Aquilina was assessed with this property for the succeeding tax year, and thereafter it seems to be assessed to Alvarez for several years. It is true that the description of these assessments is vague, but it seems to be shown that he was never in possession of any other property than the finca in question. The secrecy of all these circumstances is not unlike those in the Gaines Case, 6 Wall. 642, 18 L. ed. 950. All the evidence in the case tends to show that the claim of ownership was made by defendant Alvarez for many years, and that a claim by Concepción was not known. Plaintiff's attack, therefore, upon the validity of the dominio proceedings seems to be justified.

No independent right is set up by the defendant trustees of the Fajardo Sugar Growers Association under the purchase of March 10, 1915. Their deed is not in evidence, and so no question arises under the mortgage or registration laws of Porto Rico, and there are no allegations or proof tending to establish any rights on their part as bona fide purchasers for value without notice, an equitable doctrine which is a rule of inaction by the court rather than a rule of property. 2 Pom. Eq. Jur. § 743. As presented, this case relates to the legal title, the power of this court to remove clouds from titles by canceling conflicting instruments or proceedings. The Fajardo claim seems to stand or fall with that of Concepción, the grantor.

It only remains to say that the rulings of the court made *pro forma* during the trial will be considered as final upon

the points involved, and that the facts recited in this opinion and preceding statement are those found by the court for the purposes of the case.

It follows, therefore, that the bill has been made out, and that a decree should be entered for the plaintiffs.

It is so ordered.