## MERCELIS v. WILSON.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 68.   Submitted November 6, 1914.—Decided January 5, 1915.

While parties cannot give jurisdiction and may sometimes except to an erroneous ruling in their favor, in this case *held* that as the court had jurisdiction both of parties and subject-matter, the party invoking a ruling to change a bill for injunction to one to quiet title, cannot ask a reversal on the ground that the court had no power to grant such a motion.

As this case involved the fixing of a line, when that question was settled it was proper to quiet the title of each party as against the other; and as the findings support a decree in accord with the character of the proceedings asked for by appellant and which prevented a multiplicity of suits, such a decree was properly entered.

5 P. R. Fed. Rep. 492, affirmed.

THE facts, which involve the validity of a decree quieting title to property in Porto Rico, are stated in the opinion.

*Mr. Hector H. Scoville* and *Mr. Joseph Anderson, Jr.,* for appellants.

*Mr. Felix Frankfurter, Mr. S. T. Ansell* and *Mr. Wolcott H. Pitkin, Jr.,* Attorney General of Porto Rico, for appellees.

MR. JUSTICE LAMAR. delivered the opinion of the court.

On the north shore of the Island of Porto Rico, in the districts of Arecibo and Manati, there is a slough or swamp known as El Caño de Tiburones. It is 12 miles long, of varying width, and was supposed to contain about 7,000 acres, though that was a mere estimate since the exterior boundaries had not been established. Neither had it been authoritatively determined whether it was public land or private property. This uncertainty of boundary and title was the occasion of much litigation. *Catala* v. *Grahame*, 4 P. R. Fed. Rep. 538.

The Legislative Assembly of Porto Rico treated it as belonging to the public and, in December, 1907, leased it to Wenceslao Borda, Jr., with the right to drain, use and occupy the swamp as a sugar plantation. He was put in possession by the Porto Rican police, acting under the orders of the Commissioner and Assistant Commissioner of the Interior and other officials. For the purpose of establishing the boundaries they also took part in a survey which fixed a line running for a distance of about 2 miles through lands claimed by Mercelis and associates. Borda built a fence along this line and thereupon Mercelis and other land owners at once filed a bill in equity in the District Court of the United States for Porto Rico claiming that Borda and the Porto Rican officials had trespassed upon their property and, with force and arms, had taken possession of land on which were located valuable fresh water springs essential to the successful management and operation of their plantations. They alleged further that the trespass and marking of the line had already been the occasion of violent altercations between the respective parties; that the deprivation of the property and especially of the fresh water springs would occasion irreparable damage. For that reason, and to avoid a multiplicity of suits, the court was asked to enjoin Borda and the other defend-

ants from entering upon complainants' land, running lines, digging ditches, erecting fences or committing other trespasses. The defendants filed an answer in which they denied all of the material allegations of the bill and averred that they had only entered upon land belonging to the Government of Porto Rico by virtue of a lease from it. During the trial the defendants insisted that there was no equity in the bill, but the court, following *Hernandez* v. *Ochoa*, 4 P. R. Fed. Rep. 400, and *Catala* v. *Grahame*, 4 P. R. Fed. Rep. 538, held the remedy at law to be wholly inadequate and ruled that in view of the nature of the questions arising under the Spanish law, the case was of a nature which could not be tried by a jury. There was a trial lasting many days in which a multitude of witnesses were examined. There was an irreconcilable conflict in their testimony as to the boundaries of the swamp and whether it belonged to the public or to private individuals. "When the proofs were all in, counsel for the plaintiffs moved for leave to amend the prayer of their bill so as to make it conform to the proofs and, in effect, constitute it a bill to quiet title." The respondents objected, but the court granted the motion.

The evidence is not in the record but the court delivered an opinion (5 P. R. Fed. Rep. 492) in which he set out the facts as found by him. He thereupon made a decree that El Caño de Tiburones was public property; that the boundary of the adjacent land extended to the edge of the swamp and not to the channel or canal in the centre; that the springs, which were the main cause of the controversy, were the property of the plaintiffs; that wherever the line encroached upon high ground it should be relocated so as to run a few feet within the edge of the well defined swamp, and directed that a surveyor should mark and stake the line as designated in the decree. There was a motion and a supplemental motion for a rehearing which were denied and the case was brought to

this court on a record containing sixteen assignments of error, in which appellants complain of the findings against them; insist that the court erred in holding that equity had jurisdiction to decide the question of title, and in not sending that question to a court of law to be determined by a jury. They contend that it was error, in a proceeding involving title to what was claimed to be public land, to enter a decree in a case to which the Island of Porto Rico was not a party; that the court erred in establishing the line and in deciding the question of title adversely to the appellants; and that in a proceeding in which the sole relief prayed was an injunction, he erred in entering a decree in which he neither granted nor denied the injunction.

The original bill prayed for purely equitable relief by injunction, and if the case be treated as a suit in equity, which was to proceed "in the same manner as a circuit court" of the United States (April 12, 1900, c. 191, 31 Stat. 77, 84, § 34), then there was, of course, no right to demand a trial by jury, although, in its discretion, the court could have taken the verdict of a jury on any issue of fact upon which he desired their finding. On the other hand, if it be treated as a proceeding in a statutory court whose jurisdiction and form of procedure were to be in conformity with the Porto Rican law (31 Stat. 84, § 33), there was nothing to prevent the adoption and enforcement of rules by which relief could be afforded through the intervention of a jury or by the court itself. *Ely* v. *New Mexico R. R.*, 129 U. S. 291, 293; *Hornbuckle* v. *Toombs*, 18 Wall. 648, 654.

It is, however, not necessary to separately consider each of the sixteen assignments of error since they relate to rulings none of which is erroneous if the court, acting on the appellant's motion to amend, was justified in treating the proceeding as in the nature of a bill to quiet title. For in that event there was not only no right to a trial by jury but it was not error, as against the parties to the record, to

make a decree appropriate to such a bill instead of denying or granting the prayer of the original Bill for Injunction.

The appellants insist, however, that even with their consent, the court could not, without a cross-bill, make a decree quieting the title. In this view of the case they rely upon the assignment of error that "the court erred in suggesting and allowing the plaintiffs to amend their bill to conform to the proof after the trial of the issues, and the prayer of their bill in such a way as to change the nature and character of the bill from a bill for an injunction to a bill to quiet title."

The defendants did not appeal and the appellants cannot be heard to complain of the court's action in granting their own motion. Parties cannot give jurisdiction and may sometimes except to an erroneous ruling of the court in their favor. *Capron* v. *Van Noorden,* 2 Cranch, 126; *United States* v. *Huckabee,* 16 Wall. 414, 433; *Mansfield &c. Ry.* v. *Swan,* 111 U. S. 379, 382.

But in this case the court had jurisdiction of the subject-matter and of the parties before it, and therefore the appellants cannot ask for a reversal because of a ruling which, if not actually invoked, was voluntarily acted upon by them when they assented that the Bill should be converted into a proceeding to quiet title. *Cowley* v. *Northern Pacific R. R.,* 159 U. S. 569; *Perego* v. *Dodge,* 163 U. S. 160; *United States* v. *Memphis,* 97 U. S. 284; *Connell* v. *Smiley,* 156 U. S. 335; *Bethell* v. *Mathews,* 13 Wall. 1, 2. The case involved the fixing of a line. When that question was settled it was proper to quiet the title of each party as against the other up to the line thus established. The findings support the decree, which not only operated to prevent the multiplicity of suits referred to in the original bill, but was in accord with the character of the proceedings, which the appellants themselves asked the court to make. The decree is

*Affirmed.*