THE STATE OF OHIO, APPELLEE, *v.* WILKINSON, APPELLANT.

[Cite as State v. Wilkinson, 17 Ohio St. 2d 9.]

(No. 68-170—Decided February 5, 1969.)

10

Mr. John O. Crouse, prosecuting attorney, for appellee.
Messrs. Wilson, Wilson & Wilson and Mr. Charles H. Wilson, for appellant.

TAFT, C. J.  Defendant's first complaint is that he was denied a preliminary examination and a bill of particulars, and thus that he was not afforded the right to be informed of "the nature and cause of the accusation" against him, as required by the Sixth Amendment to the Constitution of the United States and by Section 10 of Article I of the Ohio Constitution.

On March 12, 1966, the claimed victim of the crimes, with which defendant was charged, filed an affidavit in the Hillsboro Municipal Court, charging defendant with larceny by trick, and that court ordered a preliminary examination. However, defendant was indicted before the date set for that examination, and Section 2937.34, Revised Code, which provides for an examining court where there is no indictment, no longer applied.  See paragraph one of the syllabus in *Kendle* v. *Tarbell* (1873), 24 Ohio St. 196; *White* v. *Maxwell* (1963), 174 Ohio St. 186, 188, 187 N. E. 2d 878; *Crider* v. *Maxwell* (1963), 174 Ohio St. 190, 192, 187 N. E. 2d 875.

With respect to this complaint, defendant contends further that he was not furnished with a bill of particulars elaborating the offenses charged in the indictment, as or-

dered by the Common Pleas Court of Highland County. Section 2941.07, Revised Code, provides for a bill of particulars, as follows:

"* * * The prosecuting attorney, if seasonably requested by the defendant, or upon order of the court, shall furnish a bill of particulars setting up specifically the nature of the offense charged."

Although defendant was arrested in April 1966 under this indictment, and the trial date of November 21, 1966 was set by an entry of the court on August 9, 1966, following an oral application by defendant's counsel to set a date for trial, the motion for a bill of particulars was not filed until October 27, 1966. This was hardly a seasonable request within the meaning of the above-quoted statute. The delay also tends to indicate that defendant was not ignorant of "the nature of the offense charged." Rather, as stated by the Court of Appeals, "it is evident that defense counsel wanted evidence given to them. This is not required of the prosecution."

The Common Pleas Court sustained the motion for a bill of particulars as to several requests relating to each count in an order on November 16, 1966, and a bill of particulars was filed in compliance therewith on November 18, 1966. On that same date a copy was furnished defendant's counsel. In our opinion, there is no merit to defendant's first complaint.

The defendant's second complaint is that he was "not reasonably notified of his trial date," and was then forced to stand trial while ill and insufficiently prepared. As already indicated, the November 21, 1966 trial date was set at defendant's request on August 9, 1966, and an entry was filed to this effect. Counsel for defendant filed a motion for a separate trial and to sever the counts of the indictment. This was sustained only as to severance.

It was argued that counsel could reasonably rely upon an oral remark of the clerk of the Common Pleas Court, to the effect that defendant Wilkinson would not be tried with his codefendants, but there was never any order of the

court or entry other than that setting the joint trial date of November 21, 1966. Also, the record indicates that defendant's counsel realized that the court intended to proceed with the trial on that date. On November 21, he filed a motion for continuance, specifying several grounds therefor. There is no mention of the clerk's statement in that motion. Thus, it is too late upon appeal to rely upon any such statement as a basis for any such motion for continuance.

One ground specified in that motion of November 21 for a continuance was that defendant was too ill to attend his trial.

Section 2945.02, Revised Code, provides in part:

"* * * No continuance of the trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance."

As evidence in support of defendant's claimed physical disability, a statement from a local physician was introduced which identified defendant's affliction as a urinary bladder infection, with an "urgency to urinate." However, the doctor did not recommend delaying the trial and merely noted that sitting in court for long periods of time would be detrimental to defendant's health. Another physician concurred in the diagnosis, and both physicians agreed that defendant could sit in the courtroom, with frequent relief intervals. In the course of the trial, defendant was provided with frequent opportunities to relieve himself. We cannot conclude that the court unreasonably denied the requested continuance.

The third complaint of defendant is that pre-trial publicity identified the defendants as members of a "notorious gang," and that the presence of a large number of uniformed officers at the opening of trial and the statements of a prosecuting witness, characterizing defendant as threatening the entire town, served to prejudice the jury against defendant. The record does not indicate that any of the empaneled jurors had any prejudice resulting from any adverse publicity against defendant; and there was no

motion by defendant for a change of venue. In fact, the newspapers referred to as reflecting adversely on defendant were out-of-town papers. Upon motion of defendant's counsel, and prior to completion of the *voir dire*, the recognizable officers in attendance were reduced to three. The objectionable testimony was stricken and the jury was directed to disregard it. There is no merit to this complaint.

The fourth complaint of defendant requires an explanatory statement as to the nature of the fraudulent scheme with which defendant was charged. The evidence tended to prove that defendant and his codefendants were working a variation of what is colloquially referred to as the ''green goods'' racket. The defendants claimed that, if United States currency, in the denomination of $100, was furnished, the equipment of defendant and his codefendants would convert each such $100 bill into a bill of a denomination of $1,000.

In conjunction with the arrest of a codefendant for a different crime, agents of the Federal Bureau of Investigation (with the consent of the codefendant and following the giving of advice as to his constitutional rights) searched his home and automobile and confiscated several items of epuipment. These items were present in the courtroom and contained in suit cases.

Defendant states in his brief that: ''The error of the court in the present case is not in permitting the items seized to be admitted into evidence but permitting the items to be paraded back and forth in front of the jury and in permitting extensive examination of the officers concerning the nature of said exhibits.''

Following explanatory testimony, the contents of the suit cases were offered into evidence out of the hearing of the jury, but they were rejected by the court. Contrary to the implications of defendant in his use of the phrase, ''paraded back and forth,'' the cases were never opened. In this case, the search was not illegal, no pre-trial motion to suppress was made despite defendant's knowledge of the seizure of the evidence (see *State* v. *Davis* [1964], 1 Ohio

St. 2d 28, 203 N. E. 2d 357), and the items were never admitted into evidence.

Defendant's fifth and sixth complaints relate to the proper construction of statutes specifying the two crimes for which defendant was convicted and the alleged repugnancy of one to the other.

Larceny by trick is defined in Section 2907.21, Revised Code, which provides in part:

"*No person shall obtain possession of*, or title to, *anything* of value *with* the *consent* of the person from whom he obtained it, provided he *induced* such consent *by* a *false or fraudulent representation*, pretense, token, or writing." (Emphasis added.)

Blackmail is defined in Section 2901.38, Revised Code, which provides in part:

"*No person shall, by threat delivered orally or by written or printed communication demand of another* a chattel, *money*, or valuable security, *or* accuse, *or* knowingly send or deliver a written or printed communication, with or without a name, or with a letter, mark, or designation, accusing or threatening to accuse another person of a crime punishable by law, or of immoral conduct, which, if true, would tend to degrade or disgrace such other person, or threatening to expose or publish any of the infirmities or failings of another, or to subject such other person to the ridicule or contempt of society, or to do any injury to the person or property of another with intent to extort or gain from him a chattel, money, or valuable security or a pecuniary advantage, or, with intent to compel another to do an act against his will." (Emphasis added.)

Defendant argues that, since larceny by trick requires the consent of the defrauded victim, the person who is guilty of that crime cannot also have blackmailed the victim in order to obtain the same thing of value from him. However, for larceny by trick, the defendant had to "obtain possession" of the quantity of money involved, while for blackmail he needed only to make a "threat" and a "demand" for that money and did not need to obtain possession of it. See *Elliott* v. *State* (1881), 36 Ohio St.

318. In other words, the defendant could be guilty of blackmail because of a demand for certain money accompanied by a threat, and he could also be guilty of larceny by trick because he obtained possession of the same money with consent of the person from whom it was obtained which was induced by a false or fraudulent representation.

It is contended that there was no evidence to support the charge of larceny by trick because the victim testified that he was afraid of the threats of harm to his family and this was the principal inducement for his consenting to the defendant's getting possession of his money.

However, the jury could reasonably infer from the evidence that the victim had been persuaded to part with his money by false representations about the probable success of the denomination alteration scheme. Despite the threats made, the defendants never withdrew their promise to return the victim's money, plus a profit.

Defendant attacks the blackmail conviction by asserting a construction of Section 2901.38, Revised Code, which treats the phrases following the word "designation" as setting out the only types of criminal threats or accusations constituting the crime. This overlooks the words of that section which establishes as one sufficient blackmail purpose, "by threat * * * [to] demand of another a chattel, money, or valuable security." The simple term, "threat," which may be either oral or in writing, is used without limitation. The evidence tended to prove that defendant made a demand for money with a threat of harm to the victim's family.

It is not necessary for us to decide whether the threat to the victim's family was sufficient to allow the jury to conclude that the victim felt threatened in his own person or property as those words are used in Section 2901.38, Revised Code.

Defendant argues also that threats of physical harm to the members of a person's family are separately provided for in Section 2901.32, Revised Code, which reads in part as follows:

"No person shall orally, or by telegraph, telephone, or

by written or printed communication, or by any other means, maliciously and willfully threaten to abduct, kidnap, lead, take, carry away, decoy, wound, maim, or kill any person, or one related by blood, marriage, or adoption to such person, with intent thereby to extort money, goods, chattels, or any other things of value.''

However, the reference therein to ''one related by blood, marriage, or adoption'' has no more reason to be considered exclusive than has the reference in Section 2901.38, Revised Code, to a threat to the physical safety of ''any person.'' The mere fact that defendant can demonstrate other statutes which he may have violated does not prevent a finding of his guilt under Section 2901.38, Revised Code.

The last complaint of defendant depends primarily upon his claim of mutual repugnancy between the two crimes of which he was convicted. We have rejected that contention, and it is therefore not a cruel and unusual punishment for defendant to be sentenced to consecutive terms.

There was no prejudicial error, and the convictions on counts one and three of the indictment are therefore affirmed.

*Judgment affirmed.*

ZIMMERMAN, O'NEILL and SCHNEIDER, JJ., concur.
MATTHIAS, J., dissents.
HERBERT and DUNCAN, JJ., not participating.