THE STATE OF OHIO, APPELLEE, *v.* WIGGLESWORTH, APPELLANT.

---

*This decision was made after the death of JUSTICE ZIMMERMAN and before the appointment of a successor.

(No. 68-382—Decided June 11, 1969.)

*Mr. James V. Barbuto,* prosecuting attorney, and *Mr. Stephen M. Gabalac,* for appellee.

*Mr. Angelo A. Fanelly* and *Mr. Donald E. Cope,* for appellant.

TAFT, C. J. Defendant complains because he was given no preliminary hearing pursuant to Section 2937.01 *et seq.,* Revised Code.

After being charged with first degree murder, defendant was brought before the Akron Municipal Court on June 3, 1967 for arraignment. Because defendant was not represented by counsel, the court, pursuant to Section 2937.03, Revised Code, continued the case until June 9, 1967. In the meantime, on June 8, the grand jury of Summit County indicted defendant for first degree murder. Thereafter, on July 6, 1967 defendant filed a motion to remand the cause to the Municipal Court for a preliminary hearing. This motion was properly overruled.

In *State* v. *Minamyer* (1967), 12 Ohio St. 2d 67, 232 N. E. 2d 401, paragraph one of the syllabus reads:

"The only purpose of a preliminary hearing is to determine whether sufficient facts exist to warrant the court in binding the accused over to the grand jury and to set bail, and once an indictment has been returned by the grand jury a preliminary hearing before a magistrate is no longer necessary. (*White* v. *Maxwell*, 174 Ohio St. 186; *Crider* v. *Maxwell*, 174 Ohio St. 190, approved and followed.)"

See also *State* v. *Wilkinson* (1969), 17 Ohio St. 2d 9, 244 N. E. 2d 480.

Defendant further complains because of the overruling of his motion "to suppress the use of any oral or written statements made by defendant as evidence on the grounds that any such statements were not voluntarily made and that such statements were made while defendant was in custody and was not informed of his rights * * * under the guidelines as set forth in *Miranda* v. *Arizona*, 384 U. S. 436."

In considering this motion, the trial judge conducted a hearing before the jury was chosen and determined that the required *Miranda* warnings had been given and that the statements were voluntarily made. In addition, the trial court submitted those questions to the jury with instructions to disregard the statements if they found either that the statements were not voluntarily made or that the required *Miranda* warnings had not been given.

Our examination of the record convinces us that the court was correct in determining that the required *Miranda* warnings had been given and that the statements were voluntarily made.

Defendant next complains about the overruling of a motion to suppress evidence seized as a result of a search of a certain apartment. The record shows without dispute that this apartment was rented to a Mrs. Hayes, that she paid the rent for the apartment and that she consented to the search.

Except by referring to defendant as a co-occupant of the apartment, defendant's brief does not suggest what

right he had to question the search. An examination of the record indicates that the basis for the claim of co-occupancy by defendant was that he had been living in the apartment with Mrs. Hayes off and on for about six months, and continuously for about two weeks before the killing, and had left some of his clothes there. In our opinion, this would not give defendant a right to object to a search, with her consent and in his absence, of what was admittedly her apartment. Cf. *Brown* v. *Cleveland Baseball Co.* (1952), 158 Ohio St. 1, 106 N. E. 2d 632. Such search "invaded no right of privacy or person or premises" of the defendant. *Alderman* v. *U. S.* (1969), 89 S. Ct. 961; *Frazier* v. *Cupp* (1969), 89 S. Ct. 1420; *Goldstein* v. *U. S.* (1942), 316 U. S. 114, 86 L. Ed. 1312, 62 S. Ct. 1000; *Wong Sun* v. *U. S.* (1963), 371 U. S. 471, 492, 9 L. Ed. 2d 441, 83 S. Ct. 407.

Defendant also complains because the trial court overruled his challenge for cause of one of the prospective jurors, and that this required him to use one of his peremptory challenges. An examination of the record indicates no basis whatever for this challenge for cause.

It is next contended that the court erred in admitting testimony as to the identification of the defendant from a line-up.

We do not believe the evidence discloses any such testimony.

A Reverend Martin was sitting in his car at about midnight on the night of the murder, near the place in the park where defendant's wife's dead body was found the next morning. Martin was then studying his notes for a high school commencement address to be given a few nights later. He saw a woman and a man go to a place in the park where the body was subsequently found, and he then heard two pistol shots from that direction, about a minute apart.

Next day, when he heard of discovery of the body, he went to the police station to report this and saw defendant there. At the trial, a detective testified on direct examination that Martin said that, from the sweater defendant was

then wearing, defendant looked like the man he had observed go into the park.

The testimony complained of was brought out on defendant's cross-examination of the detective, which reads:

"Q. * * * Now, did you put this defendant in a line-up? A. Yes, he was on the stage, yes.

"Q. He was the only man on that stage, isn't that true? A. That's true.

"Q. You said 'Reverend Martin said it looked like the man from the sweater he was wearing.' Wasn't that your direct testimony? A. That was before he was put on the stage."

The foregoing cannot be construed as testimony that Reverend Martin identified the defendant at any line-up.

Actually, Martin did not identify defendant as being in the park that night, although he did identify defendant's sweater as being on the man who went into the park shortly before he heard the two shots.

Also, not only in his counsel's opening statement, but also in his own testimony and in his counsel's argument, defendant admitted shooting his wife in the park at that time, although he contended he did so in self-defense.

Defendant next complains about statements made by the prosecutor in his closing argument to the jury.

In order to understand this complaint, it is necessary to consider the differences between defendant's confession and his testimony at the trial, and the contentions made by defendant in order to persuade the jury not to find him guilty of first degree murder.

At the trial, defendant testified that, after reaching the place where his wife was killed, she and defendant got into a heated argument, that she attacked him with a knife, and that he shot her twice in order to protect himself, the first shot being at close range and the second while she was falling. The coroner had testified that there were powder burns on defendant's wife at the wound where the fatal shot entered and that the other shot could not have caused death.

On the basis of this evidence, defendant contended that

he shot in self-defense. He also argued that he had no intent to kill, that at most he would be guilty of manslaughter, and that, even if there was an intent to kill, there was no premeditation so that he would not be guilty of first degree murder.

Defendant's confession first mentioned his wife attacking him only with her left fist while holding both his jacket and a knife in her right hand. Later, he stated that she laid the jacket and knife on the ground and, when he said he was going to kill her, she started to run from him; that he then fired the first shot; and that the second shot was fired while his wife was lying on her right side on the ground. Since the coroner had testified that the fatal shot entered the frontal left side of the head and the non-fatal shot entered the back of the head, this, together with defendant's statement that his first shot was to the back of the head as his wife turned to run away, indicated that the fatal shot was fired while the wife was lying on the ground. Thus, this statement was inconsistent with any self-defense theory or any contention that defendant was not guilty of either first or second degree murder.

In order to explain these substantial differences between his statements and his testimony, defendant relied upon the fact that his statement was recorded on two sides of each of three records. His counsel argued that, while the record was being changed, he said things that would have corrected his statement so that it would have corresponded with his testimony at the trial.

Admittedly, Assistant Prosecuting Attorney Arthur Snell had been in charge of the taking of this statement of defendant and he had died prior to defendant's trial. In his argument, defendant's counsel stated:

"* * * We indicated to you, and it was testified that the record was stopped and while the record was stopped, there was off the record conversations. Now, Prosecutor Snell is dead. * * * But in addition to Prosecutor Snell present was Captain Traub, Sergeant Craig, Detective Irvine and LaMonica. Why did they [sic; probably 'not' should appear here] put the detectives on to rebut that the

record wasn't stopped; to rebut that nothing was said off the record, when they attempted to requestion him."

Again, later in his argument, defendant's counsel stated:

"* * * They stopped the record. They didn't like that answer. They stopped the record. They could have brought the police officers here to prove they didn't stop that record, to rebut that."

The portion of the prosecutor's argument which is now complained of reads:

"* * * Now, they made a great deal about the record being turned off and why the state of Ohio didn't come before you and correct this situation and why we didn't put other words into the record for your benefit? The only person that could testify as to that and they know this, is a dead man—a dead, former assistant county prosecutor who was in charge of the record, who was making the record, who could have come before you and testify, who could have perhaps clarified this whole situation to your satisfaction. But Arthur isn't here. Arthur is gone. Arthur was killed, and he can't testify. So they can make all the statements they want to about correcting this record, because they know we can't fulfill that part of it. Do you think we wouldn't have him here? Naturally we would have him here. We want you to have all the facts. That's our responsibility."

Defendant's argument is that, when the prosecutor said that Snell was the only one besides defendant who could testify that nothing favorable to defendant was said by defendant when the record was stopped, that statement was false. As hereinbefore mentioned, this in effect had already been argued by defendant's counsel when he reminded the jury that several police officers were present at that time and that the prosecutor "could have brought the police officers here * * * to rebut that."

It is significant that no objection was made to this statement of the prosecution. If such an objection had been made, any improper impression that the jury might have received therefrom could have been avoided.

Furthermore, the making of such objection could not have prejudiced the defendant with the jury, even if his objection had been overruled.

In our opinion, if this defendant intended to contend that this argument of the prosecutor was erroneous, defendant should have given the court an opportunity to eliminate any such claimed error. Not having done so when any possible prejudice therefrom could have been readily eliminated, defendant cannot now rely upon that claimed error. See *State* v. *Glaros* (1960), 170 Ohio St. 471, 166 N. E. 2d 379.

Defendant next contends that the court did not properly instruct the jury as to the guidelines set forth in the *Miranda case* so that the jury could find whether defendant's statements were voluntary or involuntary.

As this court pointed out in *State* v. *Perry* (1968), 14 Ohio St. 2d 256, 266, 237 N. E. 2d 891, the trial judge should finally determine the admissibility of any alleged confession or other statement objected to by the defendant, and such question should not thereafter be submitted to the jury. Thus, in the instant case, the only prejudice in submitting that question to the jury and requiring it to reject defendant's confession if it found certain facts or failed to find certain facts, would have been prejudice to the state.

Defendant next contends that the trial court erred in excusing prospective jurors for cause because they were against capital punishment, without further questioning them as to whether or not "they could vote for the death penalty."

As we pointed out in *State* v. *Pruett* (1969), 18 Ohio St. 2d 167, a juror may be excused on a challenge for cause by the prosecutor because he is opposed to capital punishment only where, to use the words of the statute, "his opinions preclude him from finding the accused guilty of an offense punishable with death," and this has been the statutory law of Ohio at least since 1869 (66 Ohio Laws 287, 307). See Section 2945.25(C), Revised Code. As pointed out in *State* v. *Pruett, supra* (18 Ohio St. 2d 167), a challenge by the prosecutor for cause in such an instance would be

proper. See *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, and *Boulden* v. *Holman* (1969), 22 L. Ed. 2d 433, 89 S. Ct. 1138.

The record discloses the following before any jurors were excused:

"Court: As a matter of procedure and to expedite these proceedings, will you agree to this, that we call in the members of the venire or members of the panel, ten at a time, and the court will swear them to state the truth, and then all but one will go out into the office. I will ask the name and address and then turn around and ask them whether or not that person has any opposition to capital punishment.

"[Defendant's counsel]: Agreed.

"[Prosecutor]: Yes.

"Court: If they say yes, then she's excused or he's excused summarily; then no need of going into lengthy detail of questioning.

"[Defendant's counsel]: Agreed.

"Court: You will agree to that * * * [Prosecutor]?

"[Prosecutor]: Yes, your Honor.

"[Defendant's counsel]: Agreed."

Forty-three jurors were examined on *voir dire*. Of the thirteen excused on the basis of capital punishment, all but one were asked by the court and testified that they could not return a death verdict. The single exception was the third of the forty-three jurors examined. Notwithstanding the provisions of our statute, no question was raised by defendant as to the excusing of this or any other juror excused for cause because of his opinions with respect to capital punishment.

Furthermore, the record discloses that defendant's counsel carefully interrogated jurors who were not opposed to capital punishment so as to satisfy himself that they could bring in a verdict recommending mercy.

From the record, it is apparent that defendant not only did not object, but, in effect, agreed to the excusing of the only prospective juror who was excused merely because of her opposition to capital punishment, and defend-

ant did this at a time when he had a statutory right to oppose such excusing of that juror. It may be said that defendant not only waived any right to object to such excusing (*Singer* v. *United States* [1965], 380 U. S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783; *Schmerber* v. *California* [1966], 384 U. S. 757, 765 n. 9, 16 L. Ed. 2d 908, 86 S. Ct. 1826, and *State* v. *Pruett, supra* [18 Ohio St. 2d 167] footnote 2), but even induced what he now claims was error. *Lester* v. *Leuck* (1943), 142 Ohio St. 91, 50 N. E. 2d 145, *Mercelis* v. *Wilson* (1915), 235 U. S. 579, 59 L. Ed. 2d 370, 35 S. Ct. 150. In such instance, defendant can not raise such a claimed error as a ground for reversal of a judgment against him.

Even if defendant could claim that the excusing of this one juror for cause was error, we have difficulty in seeing how any prejudice therefrom can be established, especially since the prosecution still had five or six peremptory challenges available to excuse that juror when selection of the jury was completed.

In our opinion, this defendant had a fair trial, the verdict of the jury is amply supported by the evidence and there is no reasonable ground for disturbing it.

*Judgment affirmed.*

MATTHIAS, O'NEILL, SCHNEIDER, LEACH and DUNCAN, JJ., concur.*

LEACH, J., of the Tenth Appellate District, sitting for HERBERT, J.

*This decision was made after the death of JUSTICE ZIMMERMAN and before the appointment of a successor.