THE STATE OF OHIO, APPELLEE, *v*. LASKEY, APPELLANT.

(No. 68-185—Decided March 18, 1970.)

189

190

*Mr. Melvin G. Rueger,* prosecuting attorney, and *Mr. Calvin W. Prem,* for appellee.

*Mr. Burton R. Signer, Mr. Donald F. Roney* and *Mr. Donald L. Robertson,* for appellant.

*Per Curiam.* The appellant raises 28 assignments of error.

The eighth assignment of error is that the trial court overruled four defense motions for discovery, and thereby denied appellant due process and equal protection as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Appellant made motions for inspection of physical evidence, for production of grand jury minutes and transcripts, for production of names and addresses of all witnesses who had testified before the grand jury and for production of a list of all witnesses expected to testify at the trial.

The trial court denied all these motions on the authority of *State* v. *Rhoads* (1910), 81 Ohio St. 397, 91 N. E. 186.

In denying the motion for the production of the grand jury transcripts, the trial court specifically relied upon the second paragraph of the syllabus of *Rhoads,* which provides:

"A person charged with crime is not entitled, before, or at the time of trial, to the minutes of the evidence taken

before the grand jury, on which the indictment was found against him, nor to an inspection of a transcript of such evidence * * *."

While paragraph three of the syllabus of *State* v. *White* (1968), 15 Ohio St. 2d 146, 239 N. E. 2d 65, overrules paragraph one of the syllabus of *Rhoads*, appellant argues that the second paragraph of the syllabus of *Rhoads* is effectively overruled by the fourth paragraph of the syllabus of *White*, which states:

"In a criminal case, the defendant has a right to an *in camera* inspection by the trial court, with counsel for the state and the defendant, to determine the existence of inconsistencies between the testimony of the prosecution's witnesses and their prior statements."

The rule announced in the fourth and fifth paragraphs of the syllabus of *White* is not applicable to appellant's pre-trial motion for production of the grand jury transcript. The *White* rule contemplates a limited investigation for the purpose of determining whether inconsistencies exist between a witness' prior statements and his testimony at trial. Such investigation can be made only after the witness testified at trial, and, generally, can not be used by an accused for ascertaining the evidence of the prosecution for the purpose of trial preparation. It is a discovery device only for the purposes of impeachment upon cross-examination.

In this case, appellant sought discovery of the grand jury transcript before trial for purposes of preparation. Generally, proceedings before a grand jury are secret and an accused is not entitled to inspect grand jury minutes before trial for the purpose of preparation or for purposes of discovery in general. This rule is relaxed only when the ends of justice require it, such as when the defense shows that a particularized need exists for the minutes which outweighs the policy of secrecy. *Pittsburgh Plate Glass Co.* v. *United States* (1959), 360 U. S. 395, 400, 3 L. Ed. 2d 1323, rehearing denied, 361 U. S. 855, 4 L. Ed. 2d 94. See 1 Antieau, Modern Constitutional Law, 300; 20 A. L. R. 3d 7, 19.

It is also well settled that the allowance or overruling of various discovery motions in a criminal case rests within the sound discretion of the trial court, and only in cases of clear abuse will that discretion be disturbed upon review. See, for example, *State* v. *Hill* (1967), 12 Ohio St. 2d 88, 232 N. E. 2d 394. Thus, with respect to appellant's arguments concerning the overruling of the other discovery motions, we find no prejudicial error.

Defendant's eleventh assignment of error is that the trial court improperly admitted evidence of a similar offense pursuant to Section 2945.59, Revised Code. It is appellant's contention that the offense was not similar and that the admission of this testimony constitutes reversible error.

While evidence should be admitted with infinite caution pursuant to Section 2945.59, Revised Code (*Cf. State* v. *Hector* (1969), 19 Ohio St. 2d 167, 249 N. E. 2d 912), under the state of the instant record, if any error was committed under this assignment, it was not prejudicial to the rights of the appellant. See Section 2945.83(C), Revised Code. *Cf. State* v. *Witsel* (1944), 144 Ohio St. 190, 58 N. E. 2d 212; *Chapman* v. *California* (1967), 386 U. S. 18, 17 L. Ed. 2d 705.

The sixteenth assignment of error is that the trial court erred in overruling appellant's objection to the following questions, asked by the prosecutor after the appellant had testified, on direct examination, as to his defense of alibi:

"Q. Mr. Rueger: Laskey, had you ever told the police where you were on August 14th—13th and 14th, 1966?

"Mr. Signer: Objection.

"The Court: I think you could ask him a direct question, if you wish. If he made any statements, you can ask him concerning any statements he made.

"Q. Did you make any statements to the police concerning where you were on August the 13th and 14th, 1966?

"Mr. Signer: Objection.

"The Court: Yes, I think you should ask him a direct

question, Mr. Prosecutor, if you wish, if he made any statement concerning his presence.

"Mr. Rueger: Your Honor, I thought that was the question I asked. Would you re-read the question, Mr. Reporter?

"The Court: It's too general, Mr. Prosecutor. You can ask about specific statements he made to the police that would be contradictory to what he is saying here. You have the privilege of doing that.

"Q. I am asking him, did you tell the police that you were home and at the Soul Lounge on August 13th and 14th of 1966?

"Mr. Signer: Objection.

"The Court: Overruled.

"A. No, sir, I did not.

"Mr. Rueger: No further questions."

Appellant argues that this line of questioning violates his Fifth-Amendment privilege against self-incrimination in that he is being penalized for standing mute. The appellant argues that under *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, he is under no compulsion to speak. Footnote number 37 in *Miranda* states:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

Although it is tempting to characterize the language quoted above as *dicta*, we feel that there are more compelling reasons why appellant's assignment of error is without merit.

Even if the language of the footnote is taken in its most favorable light, it is obvious that what is contemplated by the United States Supreme Court is *comment*, not cross-examination, by the prosecutor on the fact that the accused stood mute in the face of the accusation. If the appellant had not taken the witness stand in this case,

the prosecutor would have been prohibited from comment-
ing on that fact. *Griffin* v. *California* (1965), 380 U. S. 609,
14 L. Ed. 2d 106. Moreover, under the rationale of the
*Griffin* and *Miranda* decisions, it is logical to assume that
if the accused had not taken the witness stand, the prose-
cutor would also be prohibited from commenting on the
fact that, prior to trial while in police custody, the accused
stood silent in the face of accusation.

In the case at bar, appellant is objecting to the fact
that his silence was considered by the trial court to be a
proper subject for cross-examination. The record indi-
cates that the prosecutor never commented upon this fact.
Moreover, the appellant voluntarily took the witness stand,
thereby making himself available for cross-examination.
While various forms of comment are prohibited by the
*Griffin* and *Miranda* decisions, nothing in those cases for-
bids cross-examination once the accused has taken the
stand. As Wigmore states:

"The case of an *accused* in a criminal trial who volun-
tarily takes the stand is a special case. Here the privilege
has been construed to protect him from being required to
answer even a single question * * *. His voluntary offer of
testimony upon any fact is a waiver as to *all other relevant
facts* because of the necessary connection between all. *Any*
voluntary disclosure by the accused, except in the most
unlikely situation, distorts the probative picture. The ap-
plication of a rule of waiver to an accused, it should be
noted, is at least as fair as its application to an ordinary
witness. The accused has the choice at the outset, un-
hurried and with full knowledge that all questions will re-
late to his incrimination, whereas the ordinary witness is
compelled to take the stand in the first instance and his
opportunity for choice does not come until later when,
perhaps by surprise and without clear portent, some part
of an incriminating fact is asked for." 8 Wigmore on Evi-
dence (McNaughton Rev. 1961), 489, Section 2276(2).

There is another compelling reason for rejecting ap-
pellant's sixteenth assignment of error. It is obvious that
when courts and commentators speak of an accused's abso-

lute right to remain silent, they do not mean an unquali-
fied or unlimited right to remain silent at all times. If this
were the meaning of *Escobedo* v. *Illinois* (1964), 378 U. S.
478, 12 L. Ed. 2d 977, and *Miranda* v. *Arizona, supra,* there
would be no explanation for cases like *Massiah* v. *United
States* (1964), 377 U. S. 201, 12 L. Ed. 2d 246, and *Hoffa* v.
*United States* (1966), 385 U. S. 293, 17 L. Ed. 2d 374, re-
hearing denied, 386 U. S. 940, 17 L. Ed. 2d 880.

The right to remain silent arises as a consequence of
a man's privilege against self-incrimination in factual sit-
uations where there is the possibility of incriminatng state-
ments being elicited by some form of compulsion. As the
United States Supreme Court has stated: "The constitu-
tional privilege against self-incrimination has two pri-
mary interrelated facets: The government may not use
*compulsion* to elicit self-incriminating statements * * * and
the government may not permit the use in a criminal trial
of self-incriminating statements elicited by *compulsion.*"
(Emphasis added.) *Murphy* v. *Waterfront Comm. of New
York Harbor* (1964), 378 U. S. 52, 12 L. Ed. 2d 678, foot-
note 6.

The *Escobedo* and *Miranda* decisions appear to be a
declaration, by the United States Supreme Court, that when
a suspect is in the custody of the police and subjected to
interrogation, the probability of *compulsion* is so great
that warnings that the suspect has certain rights, par-
ticularly the right to remain silent, must be given to avoid
the possibility of involuntary statements being elicited.

In the case at bar, although the appellant was in the
custody of the police, nothing in the record indicates that
he was ever interrogated by anyone. In all recent cases
in which the courts have prohibited cross-examination or
comment by the prosecution on the fact that an accused
stood silent in the face of accusation, the opinions clearly
reveal that the accused was not only in the custody of the
police, but was also subjected to interrogation. See, for
example, *United States* v. *Brinson* (C. A. 6, 1969), 411 F.
2d 1057; *People* v. *Christman* (1969), 23 N. Y. 2d 429, 244
N. E. 2d 703; *United States, ex rel. Smith,* v. *Brierly* (C. A.

3, 1967), 384 F. 2d 992; *United States* v. *McKinney* (C. A. 6, 1967), 379 F. 2d 259. But contra, see *State* v. *Zappia* (1968), 8 Ariz. App. 549, 448 P. 2d 119, rehearing denied, January 22, 1969, review denied, February 18, 1969.

The twenty-eighth assignment of error is that one juror was challenged for cause by the prosecution in violation of the rule announced in *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, 20 L. Ed. 2d 776.

Appellant agrees that Section 2945.25(C), Revised Code, is constitutional. He contends, however, that the challenge made with respect to a prospective juror, one Caesar Wilkins, went beyond Section 2945.25(C), Revised Code, and into the area proscribed by *Witherspoon*. Wilkins was challenged only after the following question and answer:

"Q. And do I understand then, Mr. Wilkins, if you were a juror you could not join in a verdict that would send this man Laskey to his death if you thought it was a proper case? You couldn't do it?

"A. Well, I think he should have life. I don't think I'd be willing to execute a person.

"Mr. Rueger: I think I'll have to challenge for cause, Your Honor."

At the time of the *voir dire* in the instant case, Section 2945.25(C), Revised Code, provided that a person called as a juror could be challenged for cause in a capital case if "his opinions preclude him from finding the accused guilty of an offense punishable with death."

In *State* v. *Pruett* (1969), 18 Ohio St. 2d 167, 169, 248 N. E. 2d 605, this court stated that:

"Unlike the Illinois statute, our statute does not authorize a challenge for cause of anyone merely because he says he 'has conscientious scruples against capital punishment, or that he is opposed to the same.' Our statute has, since at least 1869 (66 Ohio Laws 287, 307), apparently agreed with the conclusion stated in the opinion in *Witherspoon*, and thus has authorized challenging a juror for cause *only where such a juror had opinions which pre-*

*cluded him from voting for a verdict that would result in the death penalty.''* (Emphasis added.)

There is nothing ambiguous about Section 2945.25(C), Revised Code. It conforms with the requirements set forth in *Witherspoon.* Such an unambiguous statute is not ineffective before interpreted by this court. It is significant that this court has never, before *State* v. *Pruett, supra,* had to consider a case determining whether or not that statute meant what it clearly appears to mean, *i. e.*, that a juror may be challenged for cause because of his opinions about capital punishment only where those ''opinions preclude him from finding the accused guilty of an offense punishable with death.'' If that statute had been generally interpreted otherwise during any substantial portion of the last one hundred years, certainly some lawyer would have questioned such an interpretation, especially after his client had been sentenced to death.

Thus, appellant could have raised an objection to the challenge for cause at the *voir dire* below, irrespective of whether *Witherspoon* had ever been decided. See *State* v. *Duling* (1970), 21 Ohio St. 2d 13. The record in this case reveals that appellant did not object to the exclusion of Wilkins. This failure to object at the *voir dire* examination constitutes a waiver of the objection and precludes appellant from raising the question now. *State* v. *Pruett, supra,* footnote two; *State* v. *Wigglesworth* (1969), 18 Ohio St. 2d 171, 248 N. E. 2d 607. See *State* v. *Duling, supra.* See, also, *Singer* v. *United States* (1965), 380 U. S. 24, 13 L. Ed. 2d 630; *Schmerber* v. *California* (1966), 384 U. S. 757, 16 L. Ed. 2d 908, footnote nine.

There are good reasons why a party should not be allowed to rely upon such a potential objection where he could have but did not make any effort to give the trial judge an opportunity to consider that objection and avoid any error that might result from a ruling thereon.

For example, it is stated in the opinion in *Adams* v. *State* (1874), 25 Ohio St. 584, 587:

''* * * the fair administration of justice * * * requires

that when an error is supposed to have been committed there should be an opportunity to correct it at once, before it has had any consequences; and does not permit the party to lie by, without stating the ground of his objection, and take the chances of success on the grounds on which the judge has placed the cause, and then, if he fails to succeed, avail himself of an objection which, if it had been stated, might have been removed."

See, also, *Insurance Co.* v. *Sea* (1874), 21 Wall. 158, 162, 22 L. Ed. 511; *State* v. *Tudor* (1950), 154 Ohio St. 249, 257, 95 N. E. 2d 385; *Rhoades* v. *Cleveland* (1952), 157 Ohio St. 107, 115, 105 N. E. 2d 2.

In view of the competence of counsel who represented the defendant in this case, it is difficult to escape the conclusion that they did not object to the ruling of the trial court in excusing the one juror, that is now complained of, because they did not believe that that ruling would prejudice their client. To permit them now to rely upon that ruling as a means of getting another opportunity for their client to receive a favorable verdict from another jury, would provide a kind of gamesmanship, which would seriously interfere with the fair administration of justice in this state.

A complete and thorough examination of the record in this case discloses no error prejudicial to the rights of the appellant, and the judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

TAFT, C. J., SCHNEIDER, HERBERT and CORRIGAN, JJ., concur.

O'NEILL, J., concurs in the judgment only.

DUNCAN, J., concurs in the judgment and in paragraphs one through fifteen of the concurring opinion of O'NEILL, J.

MATTHIAS, J., not participating.

O'NEILL, J., concurring. I concur in the conviction of the defendant upon the charge of first degree murder.

The majority opinon is *per curiam* and, thus, presents

no syllabus which states the law of the case. Therefore, each member of the court concurring in the majority opinion is committed to each statement of law therein as establishing a rule of law.

That portion of the opinion with which I can not agree reads as follows:

"* * * The record in this case reveals that appellant did not object to the exclusion of Wilkins [a juror who was challenged and dismissed for cause]. *This failure to object at the voir dire examination constitutes a waiver of the objection and precludes appellant from raising the question now.*" (Emphasis added.)

The portion of the opinion in which this statement is made concerns the seating of the jury and the challenging of jurors for cause in a case where, if the jury finds the defendant guilty, the jury is then charged with the responsibility for determining whether the death penalty should be inflicted upon the defendant or he should be sentenced to life imprisonment.

The Supreme Court of the United States, in *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, 20 L. Ed. 2d 776, established certain constitutional requirements that must be met before a juror may be dismissed for cause in a death case upon the ground of the juror's personal convictions in opposition to the death penalty.

This court, in a series of opinions, beginning with footnote 2, *State* v. *Pruett* (1969), 18 Ohio St. 2d 167, 169, 248 N. E. 2d 605, has attempted to assert a rule which waives the defendant's constitutional rights established in *Witherspoon, supra,* in those cases tried prior to the decision in *Witherspoon.*

The statement in footnote 2 in *Pruett, supra,* which was not controlling in that case, was incorporated into the syllabus (paragraph one) in *State* v. *Duling* (1969), 21 Ohio St. 2d 13, which was a postconviction remedy proceeding. Paragraph one of the syllabus in that case reads as follows:

"A defendant convicted of murder in the first degree without a recommendation of mercy in a trial conducted

prior to the decision of the Supreme Court of the United States in *Witherspoon* v. *Illinois*, 391 U. S. 510, who did not object when, on the *voir dire*, some prospective jurors who expressed opinions against capital punishment were excused without a conclusive showing that their opinions would preclude them from finding the accused guilty of an offense punishable by death, as required by *Witherspoon*, and for which, under the provisions of Section 2945.25, Revised Code, objection could have been made at that time, is precluded from raising such issue for the first time in a postconviction remedy proceeding.''

Paragraph six of the syllabus in *State* v. *Wigglesworth* (1969), 18 Ohio St. 2d 171, refers to that rule. That case was before this court on a direct appeal.

Now that position is being established as a rule of law in the instant case which is before this court on direct appeal.

The rationale of that position is that Section 2945.25(C), Revised Code, the predecessor of which was originally enacted in Ohio in 1869, can be construed to require the same conclusion as that reached in *Witherspoon, supra*. It is further reasoned that defendant's counsel, because of the provisions of that statute, should have anticipated *Witherspoon* and have made an objection upon the grounds which were later asserted in *Witherspoon* by the Supreme Court of the United States.

I disagree with that reasoning and position because the language in Section 2945.25(C), Revised Code, has never [prior to *Pruett, supra*, footnote 2] been construed by this court to assert the *voir dire* examination requirements demanded by *Witherspoon, supra*, before a juror in a death case could be challenged for cause.

Both prosecution and defense attorneys in Ohio recognize that the trial court procedure in the selection of jurors, which has been accepted, followed and approved in this state in first degree murder cases, frequently has not conformed to the requirements of *Witherspoon, supra*.

The distressing thing about this court taking the position that, in cases tried prior to the decision in *Wither-*

*spoon, supra,* a defendant can be denied his constitutional rights asserted in *Witherspoon, supra,* is that whether the defendant is granted or denied those rights will determine whether he lives or dies.

In other words, this court is holding that a defendant, who did not anticipate that the Supreme Court of the United States would decide *Witherspoon, supra,* in the way in which it did, has waived his constitutional rights established by *Witherspoon* and will be required to die, while if he had anticipated *Witherspoon* he would have lived.

A second equally unfair and unjust result of this position is that it places the onus of a client's death directly upon the shoulders of his counsel. This court advises the attorney in a death case tried before *Witherspoon, supra,* that because that counsel did not anticipate the Supreme Court's decision in *Witherspoon,* and enter an objection upon the ground that anticipated that decision, his client will die, whereas had he anticipated that decision and objected to a procedure which had, up to that date, been considered acceptable in Ohio under Ohio law, his client would live.*

This rule avoids the application of *Witherspoon, supra.*

In the instant case, there is only one juror about whom the defendant raises a question as to whether the requirements of *Witherspoon, supra,* were met. In *Pruett, supra,* there were three jurors about whom the defendant raised a question. This court determined in *Pruett, supra,* that the requirements of *Witherspoon, supra,* were met in the challenge for cause as to those three. In *Wigglesworth, supra,* there was a question about one juror. In *Duling, supra,* however, the record discloses that there were 14 jurors dismissed on a challenge for cause where the constitutional requirements of *Witherspoon* were violated.

On at least three previous occasions this court has refused to follow a decision of the United States Supreme Court on remand and has attempted to find a way to avoid

---

*\*Witherspoon, supra,* did not result in a reversal of the conviction of the defendant. The conviction was affirmed as to guilt but reversed as to the death penalty.

the effect of the decision. In each instance, this court has been summarily reversed.

1. *Doughty* v. *Sacks* (1962), 173 Ohio St. 407, remanded by the United States Supreme Court for reconsideration in the light of *Gideon* v. *Wainwright* (1963), 372 U. S. 335. *Doughty* v. *Maxwell* (1963), 372 U. S. 781. This court adhered to its original judgment, *Doughty* v. *Sacks* (1963), 175 Ohio St. 46, and was reversed by the United States Supreme Court in *Doughty* v. *Maxwell* (1964), 376 U. S. 202.

2. *State* v. *McLeod* (1962), 173 Ohio St. 520, dismissed—no debatable constitutional question involved. The Supreme Court of the United States vacated the judgment and remanded the cause to this court "for consideration in light of *Massiah* v. *United States* [1964], 377 U. S. 201," in *McLeod* v. *Ohio* (1964), 378 U. S. 582. Previous judgment of the Court of Appeals affirmed by this court in *State* v. *McLeod* (1964), 1 Ohio St. 2d 60. Reversed by the United States Supreme Court in *McLeod* v. *Ohio* (1965), 381 U. S. 356.

3. *State* v. *O'Connor* (1964), 177 Ohio St. 181, appeal dismissed on the ground that it presented no substantial constitutional question. The United States Supreme Court vacated the judgment of this court and remanded the cause for consideration in the light of *Griffin* v. *California* (1965), 380 U. S. 609. *O'Connor* v. *Ohio* (1965), 382 U. S. 286. This court affirmed the previous judgment of the Court of Appeals in *State* v. *O'Connor* (1966), 6 Ohio St. 2d 169. Reversed by the Supreme Court of the United States in *O'Connor* v. *Ohio* (1966), 385 U. S. 92.

The question in the *O'Connor case* was very similar to the question presented by the instant case.

In my opinion, *Schmerber* v. *California* (1966), 384 U. S. 757, footnote 9, and *Singer* v. *United States* (1965), 380 U. S. 24, do not support the position which the majority of this court asserts; namely, that a failure to anticipate *Witherspoon, supra*, in the light of Section 2945.25(C), Revised Code, constitutes a waiver of a constitutional right, the loss of which means death rather than life for the defendant.