[Cite as *State v. Vandergriff*, 2021-Ohio-3230.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200282 |
| | | TRIAL NO. C-19CRB-26243 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| VICKY VANDERGRIFF, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 17, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of Arica L. Underwood LLC* and *Arica L. Underwood,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} What started as a routine shopping trip ended with an assault conviction after a verbal confrontation between defendant-appellant Vicky Vandergriff and another customer mushroomed into an all-out brawl. Ms. Vandergriff now appeals, claiming a violation of her due process rights and portraying her conviction as against the weight and sufficiency of the evidence. Because Ms. Vandergriff invited the trial court's decision that she now challenges on appeal, we reject her due process challenge. We also conclude that her conviction was supported by the weight and sufficiency of the evidence and affirm the trial court's judgment.

I.

{¶2} Ms. Vandergriff and her wife went to Dollar Tree with codefendant Heaven Albright. But while paying for her merchandise, Ms. Vandergriff became angry with two of the cashiers and began to verbally accost them, even threatening to beat one of them with her crutch (she was recovering from a knee injury). Another customer in a nearby check-out lane, John Neidich, took umbrage with Ms. Vandergriff's behavior and intervened by informing her that her actions weren't necessary. Instead of deescalating the situation, Mr. Neidich's remark infuriated Ms. Vandergriff, prompting her to retort that he had better shut his mouth or she would attack him as well. A war of words ensued between the two, eventually escalating into a physical melee as they tumbled out of the store.

{¶3} In Mr. Neidich's telling, Ms. Vandergriff's wife shoved him as he left the store. And after he warned her to not touch him, she pushed him out the door as Ms. Vandergriff struck him on the head with her crutch. Mr. Neidich testified that

Ms. Vandergriff and her wife then engaged in a full-on assault, jumping onto him and striking him with closed fists. Mr. Neidich and Ms. Vandergriff eventually got tangled up on the ground where Ms. Vandergriff bit him under the arm. An onlooker came up and handed Mr. Neidich some pepper spray, which he used to fend off Ms. Vandergriff. Mr. Neidich eventually stood back up, but Ms. Vandergriff (while still on the ground) grabbed ahold of his leg, keeping him from getting away. And at some point during the frenzy, Ms. Vandergriff's friend and codefendant, Ms. Albright, came up from behind and joined the fray. Ms. Vandergriff and Ms. Albright allegedly continued the assault by punching Mr. Neidich and tearing off his shirt, stopping only when sheriff deputies arrived.

{¶4} Unsurprisingly, Ms. Vandergriff offers a different perspective on the encounter, although she largely corroborates the general tenor of the verbal altercation that precipitated the fight. In Ms. Vandergriff's rendition, it was *Mr. Neidich* who initiated the fight by first pushing her wife, then proceeding to punch Ms. Vandergriff in the face after she tried to intervene. Thus, Ms. Vandergriff claims that she acted in self-defense.

{¶5} In addition to Mr. Neidich's and Ms. Vandergriff's testimony, two Hamilton County deputies testified. They explained that upon arriving at Dollar Tree, Mr. Neidich looked like he had survived a beating: they saw his shirt in tatters, a bite mark that was bleeding, and a series of scratches on his neck and face. All three women were charged with misdemeanor assault under R.C. 2903.13.

{¶6} The case proceeded to a bench trial with Ms. Vandergriff and Ms. Albright being tried together a codefendants. Ultimately, the trial court believed Mr. Neidich's version of events, finding Ms. Vandergriff guilty (but not Ms. Albright) and

sentencing her to 180 days with 179 days suspended.  Ms. Vandergriff now appeals, bringing three assignments of error, arguing that her due process rights were violated and that her conviction was against the weight and sufficiency of the evidence.

## II.

{¶7}     In her first assignment of error, Ms. Vandergriff insists that her due process rights were violated because the trial court did not require the state or Dollar Tree to produce any surveillance video.  Although Ms. Vandergriff requested Dollar Tree to turn over any video, it apparently never responded.  At trial, defense counsel asked one of the deputies about surveillance footage, and the deputy responded that he thought video existed but that he had not viewed it.  This statement by the deputy caught the trial court by surprise, and during recess, the court explored the issue with counsel in chambers.  Once the trial resumed, the court addressed the issue on the record.

> COURT:  But we did have an issue come up * * * in regard to a video that may or may not exist.  It's my understanding that the state does not have the video, is that correct?
>
> PROSECUTOR: Correct.
>
> COURT: There has, however, been at least a suggestion that Dollar Tree may in fact still have the ability to produce this video. * * * [H]owever, I have indicated to you [defense counsel] that if either one of you wanted a continuance in progress before we got to your portion of the case * * * I would give a continuance in progress * * * .

4

MS. VANDERGRIFF'S ATTORNEY: On behalf of Ms. Vandergriff, I have spoken with Ms. Vandergriff, advised her of what was going on, and we would like to continue with the trial.

* * * *

CO-DEFENDANT ALBRIGHT'S ATTGORNEY: Your honor, we would like to proceed with trial as well.

* * * *

COURT: For the defendants, you understand what I was giving was the opportunity if in fact the video has not been located yet, however in abundance of caution, I was willing to allow your attorneys to have a continuance to see if they could obtain it. Everyone is electing not to do that, is that correct?

MS. VANDERGRIFF: Yes, ma'am * * * .

{¶8} Although the trial court gave Ms. Vandergriff two options—proceeding with trial or taking a pause to try to track down the footage—she now argues it erred by deferring to her choice. Even if we imagine that the trial court somehow went astray, Ms. Vandergriff cannot now object because "[t]he doctrine of invited error specifies that a litigant may not 'take advantage of an error which he himself invited or induced.' " *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. To be sure, "invited error must be more than mere 'acquiescence in the trial judge's erroneous conclusion * * * .' " *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000), quoting *Carrothers v. Hunter*, 23 Ohio St.2d 99, 103, 262

5

N.E.2d 867 (1970). But the "[Ohio Supreme Court] has found invited error when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed." *Campbell* at 324, citing *Hal Artz* at 28, fn. 16; *State ex rel. Lowery v. Cleveland*, 67 Ohio St.3d 126, 128, 616 N.E.2d 233 (1993); *State v. Wigglesworth*, 18 Ohio St.2d 171, 180-181, 248 N.E.2d 607 (1969). Here, Ms. Vandergriff explicitly rejected the trial court's offer to suspend the trial so that she could investigate whether any surveillance video existed. She cannot now turn the trial court's benevolence into a sword. We accordingly overrule Ms. Vandergriff's first assignment of error.

III.

{¶9} In her second and third assignments of error, Ms. Vandergriff characterizes her conviction as contrary to the weight and sufficiency of the evidence. In reviewing Ms. Vandergriff's manifest-weight challenge, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, and the entire record. *Id.* But we will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Here, Ms. Vandergriff does nothing to explain how the trial court lost its way in finding Mr. Neidich more believable. Furthermore, "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State*

*v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. Thus, we find Ms. Vandergriff's manifest weight challenge unpersuasive and overrule her second assignment of error.

{¶10} As to Ms. Vandergriff's sufficiency challenge, she narrowly argues that the state failed to meet its burden of proof as required in Ohio's self-defense statute. *See* R.C. 2901.05. If a defendant presents evidence that "tends to support" a self-defense theory, "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense [or] defense of another * * * ." *See* R.C. 2901.05(B)(1). Thus, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found * * * beyond a reasonable doubt' " that Ms. Vandergriff was *not* acting in self-defense. *See State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Whether the evidence sufficed to support Ms. Vandergriff's conviction presents a legal question that we review de novo. *State v. Ellison*, 1st Dist. No. C-070875, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 9 (1st Dist.). Here, we easily conclude that the state met its burden of presenting sufficient evidence to sustain the conviction. Viewing Mr. Neidich's and the deputies' testimony in a light most favorable to the state—as we must—a rational factfinder could find that Ms. Vandergriff initiated the assault. Mr. Neidich specifically testified that Ms. Vandergriff struck him with her crutch without any physical provocation. And the deputies testified that it was Mr. Neidich who was assaulted, not Ms. Vandergriff. On appeal, Ms. Vandergriff does not address this

evidence and instead summarily concludes that sufficient evidence did not exist. On the record at hand, we find Ms. Vandergriff's sufficiency challenge not well taken and overrule her third assignment of error.

\*     \*     \*

{¶11}  In light of the foregoing analysis, we overrule Ms. Vandergriff's three assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion